IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DARRELL McFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:05-cv-449 |
| | ) | (VARLAN/GUYTON) |
| TOWN OF OLIVER SPRINGS, | ) | |
| ESTATE OF EDWIN L. KELLEY, | ) | |
| Individually, EDWIN L. KELLEY, in | ) | |
| his official capacity as Mayor, and | ) | |
| KENNETH MORGAN, Individually | ) | |
| and in his official capacity as Chief of Police, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This is an action for violation of plaintiff's civil rights pursuant to 42 U.S.C. §§ 1983 and 1985; for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Tennessee Handicap Act, T.C.A. § 8-50-103; for the Age Discrimination in Employment Act, 29 U.S.C. § 623 and the Tennessee Human Rights Act, T.C.A. § 4-21-101, *et seq.*; for wrongful and retaliatory discharge pursuant to T.C.A. § 50-6-114; and for extreme and outrageous conduct and infliction of emotional distress arising out of the termination of plaintiff's employment in October 2004. Currently pending is the defendants' motion for summary judgment [Doc. 15]. For the reasons that follow, the motion will be granted and this action dismissed.

# I.

## *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff and are taken from the plaintiff's complaint [Doc. 1 at ¶¶ 8-52].

Plaintiff Darrell McFarland was hired as a police officer for the Town of Oliver Springs in May 2001. At the time of his hire, he was 47 years old. Approximately six months after Mr. McFarland was hired as an officer, defendant Kenneth Morgan became the Chief of Police. At all times relevant, Edwin Kelley was the Mayor of the Town of Oliver Springs.

As a police officer for Oliver Springs, plaintiff's regular duties included, among other things, service and execution of warrants, carrying of a weapon, apprehension and arrest of subjects, investigation and patrol, issuance of citations, and other duties commonly performed by law enforcement officers. At the time defendant Morgan became the Chief of Police in 2002, Mr. McFarland was a full-time police officer for the Town of Oliver Springs. His duties were the same as a regular officer: "patrolling the City, serving warrants, arresting people." Under Tennessee law, an officer in the plaintiff's position is required to be trained under the State of Tennessee Peace Officers Standards and Training Commission Program (POST) within six months of the date of his hire. At the time Morgan became Chief of Police, Morgan was aware that McFarland had not been POST-certified, notwithstanding the fact that he had been hired more than six months before.

In July 2003, during Mr. McFarland's performance of his duties as a police officer, he sustained a work-related injury to his right knee while attempting to serve a warrant on a subject. McFarland claims that he gave timely notice of his injury to defendant Morgan. However, Morgan actively discouraged McFarland from filing a workers compensation claim and recommended, instead, that McFarland utilize his own health insurance benefits that provide for medical care. Plaintiff also claims that Morgan violated the City's applicable ordinances by failing to notify the City Administrator of McFarland's injury and McFarland received no medical care from the City.

Sometime thereafter, defendant Morgan, on behalf of the Town of Oliver Springs, advised plaintiff that he intended to send him for training and POST certification. Morgan filled out the necessary documentation and McFarland signed it. Morgan then forwarded the paper work to the State of Tennessee and advised McFarland that he was to report for the POST training in Donelson, Tennessee, in October 2003.

As instructed, McFarland reported to the Training Academy on or about October 26, 2003. However, during the course of the physical training at the Academy, McFarland sustained further injury to his right knee when he felt a painful tear while performing exercises at the Academy. As a result of the injury, McFarland was required to withdraw from the Academy on October 27, 2003, and he returned to his regular duties as a police officer for Oliver Springs.

Chief Morgan received written notification from POST that McFarland had had to withdraw from the Academy on October 27, 2003, because of an injury. Thereafter, Morgan

wrote a request to the POST agency for a waiver of the six-month rule for certification of law enforcement officers specifically because "Mr. McFarland suffered a knee injury on the first day of the basic on October 26, 2003."

Plaintiff again claims that despite clear notice and knowledge of this work-related injury, Morgan violated the City's applicable ordinances by failing to notify the City Administrator of McFarland's injury. Likewise, McFarland received no workers compensation benefits for this on-the-job injury.

Following McFarland's withdrawal from the Academy as the result of his injury, the waiver sought by defendant Morgan was granted and McFarland was rescheduled to attend the Training Academy to achieve POST certification beginning in October 2004.

Shortly after receiving notice that he was to attend the Training Academy in October 2004, Morgan advised McFarland that he was "going to have to make it to the Academy that time." He further told McFarland that if he "didn't make it this time we would all be in trouble." McFarland asked him what he meant, and Morgan allegedly told him that Morgan had fabricated McFarland's hiring date from his first application to the POST training to put in there that he had been hired six months prior to sending him to the Academy. McFarland claims that this was the first that he had heard that fabricated paperwork had been sent to the State of Tennessee.

By the time the defendants first attempted to send McFarland to the POST Training Academy, McFarland had already been a police officer for the Town of Oliver Springs for approximately two and a half years. Morgan acknowledged in his deposition that by the time

4

he made efforts to send McFarland to the POST training he was already "out of time." Morgan further admitted that the Town of Oliver Springs violated the requirements of POST by failing to pair Mr. McFarland with a field training officer as he performed his duties while he remained uncertified.

Morgan further admitted filling out an application for POST certification for McFarland with a stated hire date of October 2003. He further admitted that he signed and sent in the application for McFarland with the inaccurate date of hire. Morgan further testified that the Mayor also knew of the altered hire date which was provided to the State of Tennessee.

Prior to the date upon which Mr. McFarland was scheduled to make a second effort at completing POST certification, he sustained another work-related injury to his knee. On or about July 14, 2004, McFarland injured his right knee as he was serving a warrant as a police officer for Oliver Springs. Again, McFarland advised his supervisor, Chief Morgan, of the injury and again, Chief Morgan allegedly violated the law by failing to report the injury and failing to provide the required workers compensation benefits to McFarland.

Ultimately, Mr. McFarland required surgical repair of his work-related knee injuries, and he underwent a surgical procedure on September 28, 2004. The necessary surgical procedure prevented Mr. McFarland from attending the Training Academy scheduled for October 2004. McFarland asked Chief Morgan to seek a waiver for him again and Morgan refused. He did not tell McFarland why he refused to seek the waiver, but simply stated, "The Mayor wouldn't do it."

While Mr. McFarland was recovering from his surgical procedure, he received a letter written by Mayor Kelley advising him that his employment as a police officer for the Town of Oliver Springs was being terminated. Defendant Kelley wrote in this letter of termination that the City had "no record of damage to [Mr. McFarland's] knee by virtue of [his] employment." Further, the letter cited various provisions of Tennessee law requiring that law enforcement officers receive mandatory certification training within six months of initial employment as a law enforcement officer. The letter concluded that, "without this certification, we can no longer legally employ you as a police officer with the Town of Oliver Springs, nor at this time do we have any other work that you might be suited for."

McFarland attempted to return to his employment with the Town of Oliver Springs and offered to work in the Warrants Office following his surgery. The defendants refused. Plaintiff claims that shortly thereafter they instead hired a younger officer, believed to be 43 to 45 years of age, to do warrants. Mr. McFarland testified that he believed he would have been accepted to attend the Academy following his recuperation from his knee surgery, but he was never given the opportunity to go by the defendants. Finally, Mr. McFarland was given no opportunity by the defendants to appeal the decision to terminate his employment and was given no opportunity for a hearing.

II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

*Plaintiff's Federal Due Process Claims*

Plaintiff claims that when he was terminated without a hearing he was deprived of a property interest without due process of law, violative of 42 U.S.C. § 1983 and § 1985(3).

The requirement of procedural due process is implicated only where plaintiff has been deprived of a property or liberty interest. *Woolsey v. Hunt*, 932 F.2d 555, 563-64 (6th Cir. 1991). Such a property interest is not created by the Constitution itself, but must stem from an independent source such as state law. *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir. 2002). Plaintiff has the initial burden of establishing that he had a property interest in continued government employment under applicable state law. *Brown v. City of Niota, Tennessee*, 214 F.3d 718, 721 (6th Cir. 2000). This is a more difficult burden for government employees because, absent statute, ordinance, or contract specifically creating such an interest, Tennessee has long recognized the doctrine of employment at will. *Id.* at 721.

In this case, no question of fact remains that plaintiff was an "at will" employee of the Town of Oliver Springs. He admits in his deposition that he was not aware of signing any contract of employment [McFarland deposition at p.41]. In his response to the motion for summary judgment, plaintiff relies upon two sources which he claims created a property interest in continued employment: an uncited ordinance of the Town of Oliver Springs [*see* Ex. 10 to McFarland deposition] and T.C.A. § 38-8-304. While the portion of the ordinance which plaintiff cites does purport to establish a procedure for dismissing certain employees, it does not create a promise of or property interest in continued employment. Plaintiff's

citation to T.C.A. § 38-8-304 also does not create a property interest. Rather, that statute applies only to "dismissal, demotion, suspension without pay, or transfer for punitive reasons. ... " In the instant case, plaintiff was not terminated as a punishment, but rather for failing to complete the POST training in a timely manner. Even if plaintiff had evidence that he was terminated for punitive reasons, the statute would still not apply because the Town of Oliver Springs provides procedures for termination of employees. T.C.A. § 38-8-309 provides: "This part shall apply only to those agencies that now provide a property interest in employment for their police officers and that have no other established procedure for dealing with the dismissal, demotion, suspension, or transfer for punitive reasons of police officers." The United States Court of Appeals for the Sixth Circuit has noted that T.C.A. § 38-8-304 "only provides a default rule that can be overridden by local regulation." *Lisle v. Metropolitan Gov't. of Nashville*, 73 Fed. Appx. 782, 2003 WL 21580642 (6th Cir. 2003).

Accordingly, neither the uncited ordinance mentioned by the plaintiff nor T.C.A. § 38-8-304 gave him a property interest in his employment. Therefore, plaintiff cannot establish the necessary elements of a due process claim sufficient to support a claim under 42 U.S.C. § 1983 or a conspiracy claim under § 1985(3).

IV.

*Plaintiff's Age Discrimination Claim*

To establish an age discrimination claim under either the Age Discrimination in Employment Act, 29 U.S.C. § 623, or the Tennessee Human Rights Act, T.C.A. § 4-21-101,

9

*et seq.*, plaintiff bears the burden of proving by a preponderance of the evidence that age was a determining factor in the adverse employment action taken against him. *Zverina v. TRW Fuji Valve, Inc.*, 2006 WL 752542, p.5 (E.D. Tenn. 2006). To establish a *prima facie* case of age discrimination, plaintiff must prove: (1) that he was at least 40 years old at the time of the alleged discrimination; (2) that he was subjected to an adverse employment action; (3) that he was otherwise qualified for the position; and (4) that he was replaced by a person outside the protected class. *Id.*

In this case, plaintiff was 47 years old at the time he was hired and 49 when he was terminated. In his deposition, he admitted that he was replaced by a person who was "43 or 45 years old." [McFarland deposition at p.46]. Thus, this person fits within the same "protected class" as the plaintiff. Moreover, plaintiff has presented no evidence that age played any role in the decision to terminate him. Plaintiff has not addressed the age discrimination issue in response to defendants' motion and appears to have abandoned those claims. [*See* Doc. 34]. As such, plaintiff cannot prove a *prima facie* case of age discrimination, and those claims must be dismissed.

V.

*Plaintiff's Disability Claim*

In order to establish a *prima facie* case of disability discrimination under the Americans with Disabilities Act (ADA), plaintiff must demonstrate that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements,

with or without reasonable accommodation; and (3) he was discharged by reason of his handicap. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The appropriate framework for analyzing a handicap discrimination claim under the Tennessee Handicap Act (THA) and the Tennessee Human Rights Act (THRA) is that the claimant must: (1) establish qualification as an individual with a disability; (2) show the ability to perform the essential functions of the job with or without reasonable accommodation; and (3) show subjection to an adverse employment action on the basis of a protected disability. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698 (Tenn. 2000).

Initially, plaintiff must establish that he has a disability. *Barrow v. Cato Corp.*, 2006 WL 13216 (E.D. Tenn. 2006). The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The United States Court of Appeals for the Sixth Circuit looks to the guidelines promulgated by the Equal Employment Opportunity Commission (EEOC) for assistance in determining whether a disability substantially limits a major life activity. *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997). The guidelines define "major life activities" to include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, and working." *Id.* The guidelines define the phrase "substantially limits" as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

      (ii) Significantly restricted as to the condition, manner or duration under which the average person in the general population could perform that same major life activity.

The guidelines also outline certain factors that a court should consider in determining whether an individual is substantially limited in a major life activity; (I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or expected permanent or long-term impact of or resulting from the impairment. *Id.*

      The term "handicap" is defined by the THRA as:

      (i) A physical or mental impairment which substantially limits one (1) or more of such person's major life activities;

      (ii) A record of having such an impairment; or

      (iii) Being regarded as having such an impairment.

*Barnes*, 48 S.W.3d at 706.

      In this case, plaintiff does not suffer from any disability or handicap as defined by either the ADA or the THA/THRA. He continued to work after his termination from his position with the Oliver Springs Police Department and now works 40 to 50 hours per week for Loomis Fargo. He admits that his knee is "fine" today and has no problems with his knee during work. [McFarland deposition at pp.50-51]. His injury was temporary and minor and had no long-term impact. Thus, the court finds that plaintiff has no disability or handicap within the meaning of the federal or state statutes.

Alternatively, even if he had an impairment or handicap, plaintiff was unable to perform the necessary and legal duties required of the position by T.C.A. § 8-50-103(a) since he could not complete the required POST certification in order to be legally employed by the Town of Oliver Springs as a police officer.

VI.

*Plaintiff's Wrongful Discharge Claims*

Plaintiff also alleges that he was wrongfully discharged under both Tennessee statutory and common law. Plaintiff claims this retaliation was for two reasons: (1) for making a workers compensation claim; and (2) for bringing to light the unlawful activities of the defendants (*i.e.*, forging the dates of plaintiff's hire and not reporting plaintiff's on-the-job injuries).

To establish a retaliatory discharge for filing of a workers compensation claim, plaintiff must prove the following elements: (1) the plaintiff was the defendant's employee at the time of the injury; (2) the plaintiff made a claim against the defendant for workers compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the plaintiff's claim for workers compensation benefits was a substantial factor in the defendant's motivation to terminate the plaintiff. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). To prove the fourth element, the substantial factor element, the plaintiff must present "direct evidence of the necessary causal link or ... compelling circumstantial evidence of such a link." *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685

13

(Tenn. Ct. App. 1999). The employee must establish that the employer's action was based solely on impermissible grounds. *Guy v. Mutual of Omaha*, 79 S.W.3d 528, 535 (Tenn. 2002).

In this case, the plaintiff has not pled or offered any evidence indicating that the request for workers compensation benefits factored into the decision to terminate his employment. Plaintiff stated that it did not matter to him which doctor he visited and that he did not even know if his workers compensation claim had been filed or not. [McFarland deposition at p.43]. There is simply nothing in the record to support an inference that the workers compensation claim had anything to do with his termination. In fact, plaintiff was given an opportunity to attend the POST training even after he filed the workers compensation claim, but because of the scheduling or his surgery, plaintiff did not take advantage of that opportunity.

In order to sustain a claim for statutory retaliatory discharge, the plaintiff must show that he was terminated "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50-1-304. Plaintiff claims that he was terminated because defendants were afraid that it would be discovered that they had forged the documents which showed plaintiff's date of hire and/or failed to follow the workers compensation laws. Unfortunately for plaintiff's claims, he does not allege that he refused to participate in or refused to remain silent about illegal activities which are essential elements of his cause of action. In fact, plaintiff makes no claim that he was going to report the defendants for allowing him to continue his employment in the absence of the necessary POST certification.

14

Instead, he was an active participant in these allegedly illegal actions. Nor does he claim that he ever threatened the defendants with exposing the alleged illegal activities.

Accordingly, plaintiff has failed to establish a *prima facie* case of retaliatory discharge, either under statute or at common law.

VII.

### *Plaintiff's Outrageous Conduct Claim*

To establish a *prima facie* case of outrageous conduct or intentional infliction of emotional distress, a plaintiff must prove: (1) that the conduct complained of is intentional or reckless; (2) that the conduct is so outrageous in character and so extreme in degree as to go beyond all bounds of decency that it is not tolerated by civilized society; and (3) that the conduct results in serious mental injury to the plaintiff. *Bain v. Wells*, 936 S.W.2d 618, 633 (Tenn. 1997). The Tennessee Supreme Court has noted that this standard of proof for the plaintiff is an "exacting standard." *Miller v. Wilbanks*, 8 S.W.3d 607 (Tenn. 1999). Ultimately, plaintiff's claim amounts to his allegation that the defendants terminated him because they were afraid that the State agency might discover that they had previously forged a document stating the date of plaintiff's hire and in retaliation for the plaintiff filing a workers compensation claim. As indicated above, no evidence was presented to indicate that the firing had anything to do with the workers compensation claim. The court cannot find that terminating the plaintiff's employment, in light of the admitted fact that he had twice missed the POST certification class, and to conceal the purported "forgery" of plaintiff's hire

date does not meet the standard of "beyond all bounds of decency that it is not tolerated by civilized society." Moreover, plaintiff has not claimed that he suffered the serious mental injury requirement necessary to sustain such a claim. He has not sought counseling or required any special treatment for a mental or emotional disorder and he is presently working for Loomis Fargo approximately 40 to 50 hours per week. Therefore, plaintiff also fails to state a claim for outrageous conduct.

## VIII.

### *Conclusion*

In light of the foregoing, defendants' motion for summary judgment [Doc. 15] will be granted, and this action will be dismissed.

Enter judgment accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE